OPINION
Defendant-appellant Wesley R. Pickering ("Pickering") brings this appeal from the judgment of the Court of Common Pleas of Allen County sentencing him to three terms of five years in prison to be served consecutively.
On April 13, 2001, Pickering was indicted on three counts of rape, one count of gross sexual imposition, two counts of pandering sexually oriented matter involving a minor, and two counts of illegal use of a minor in nudity-oriented material. Pickering pled not guilty to all charges on April 20, 2001. On November 15, 2001, Pickering, pursuant to a plea agreement, entered guilty pleas to three counts of gross sexual imposition, felonies of the third degree. The remaining charges were then dismissed. On January 18, 2002, a sentencing hearing was held. The trial court then sentenced Pickering to five years in prison on each count and ordered that the sentences be served consecutively. The judgment entry was filed on January 22, 2002. Pickering filed his notice of appeal on February 21, 2002.
On February 21, 2002, Pickering also filed a motion to withdraw his guilty plea. An evidentiary hearing was held on this matter on April 1, 2002. On April 2, 2002, the trial court filed its judgment entry overruling the motion to withdraw the guilty plea. Pickering filed his notice of appeal on that judgment on April 4, 2002.
Pickering raises the following assignments of error in the first appeal.
"[Pickering] was denied the right to effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States constitution and Article I, Section 10 of the Ohio Constitution."
"The trial court erred in not complying with the requirements of Crim.R. 11(C)(2) in that [Pickering's] plea was not knowingly and intelligently entered into."
"The trial court erred in imposing the maximum and consecutive sentences."
"The trial court erred in ordering the sentences on each of [Pickering's] offenses to run concurrent (sic)."
In the second appeal, Pickering raises the following assignments of error.
"The trial court erred in not allowing [Pickering] to withdraw his guilty plea in that [Pickering] was denied the right to effective assistance of counsel as guaranteed by the Sixth andFourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution."
"The trial court erred in not allowing [Pickering] to withdraw his guilty plea in that the trial court did not comply with the requirements of Crim.R. 11(C)(2)."
"The trial court erred in not allowing [Pickering] to withdraw his guilty plea in that the trial court's decision was against the manifest weight of the evidence."
In the second and sixth assignments of error Pickering argues that his plea of guilty was not knowingly and voluntarily made. Pickering claims that he did not know that he would not be eligible for probation at the time that he entered the plea. Pickering also claims that the trial court did not comply with Crim.R. 11(C)(2). However, the record of the change of plea hearing indicates that Pickering was informed of the potential consequences of the plea. At the hearing, the following dialogue took place.
 "The Court: Well, I'm going to go over some things with you. If you have any questions of me, let me know. If you want to take a moment more to talk with Mr. Fisher, let me know.
 "It's been represented that you'd be pleading guilty to three counts of gross sexual imposition with the allegation in each count that the person, the victim would be less than thirteen years of age. It's a felony of the third degree, do you understand that, on each of the counts?
"Defendant: Yes, I do, your Honor.
 "The Court: And each felony of the third degree carries with it a potential prison sentence of one, two, three, four, or five years. The Court is the one who determines in that range. The minimum is one and the maximum is five. Do you understand that?
"Defendant: Yes, your Honor.
 "The Court: That's with each count. Now there is some question and we had a discussion in chambers, and you'll see on that form that it says "mandatory prison." There is a section in the Ohio Revised Code that I cited on that pink sheet of 2929.13(F) that has language regarding the mandatory nature of a sentence of imprisonment for gross sexual imposition when the victim is thirteen or younger. That section, in my view, is probably subject to different interpretations. I'm putting it on that plea sheet, and I'm letting you know, that the State's position is at this point that it is mandatory. I've told Mr. Fisher that he could have an opportunity either before or at sentencing to give me authority that it's not mandatory. I haven't had the time to take and do the research. But, do you understand that one reading of that is that those would be mandatory prison terms, meaning you would have to get a prison sentence on each count? The range, the number of years for the prison sentence is still discretionary with the Court. Do you understand what I'm saying?
"Defendant: Yes, your Honor.
 "The Court: So, as we've got it now as it's written up on that plea sheet, it is indicated there is a mandatory prison sentence. All I can say is if Mr. Fisher can give me some authority as to why that's not the case, or if I find a reason that it shouldn't be mandatory, that could change. But, I want you to know that as the State is proposing, and as the statute reads, it appears that they are mandatory. Do you understand that? We'll confirm that, obviously, before the sentence is imposed.
"Mr. Fisher: Might we have a minute on that Judge?
"The Court: Sure.
"(WHEREUPON, Court went off the record briefly.)
 "The Court: Do you understand what it means to be mandatory?
"Defendant: Yes, your Honor.
 "The Court: Okay. That means, number one, that you're not going to get probation, or community control. Also, if it's a mandatory sentence you're not eligible for judicial release. Judicial release is a provision in Ohio law that if you get a prison sentence the Court has discretion after a certain period of time to give you judicial release earlier than normal. If it's a mandatory sentence you're not eligible for getting an early release. Do you understand that?
"Defendant: Yes, your Honor.
 "The Court: Okay. As I stated, because of the language and the way that the statute is written it appears that it is mandatory, but we'll confirm that and I'll give your attorney a chance to argue that it shouldn't be mandatory. If it's mandatory, as it appears to be, you don't get community control, or probation, under any circumstances. Do you understand that?
"Defendant: Yes, your Honor.
"* * *
 "The Court: Any sentence that's imposed in counts one, two, and three could be consecutive, meaning back to back, or they could be concurrent, meaning run together. Do you understand that?
"Defendant: Yes, your Honor.
 "The Court: Okay. Again, just to make sure you're understanding because I thought you might have misunderstood, but with regard to the F-3 it's one to five. If it's mandatory it means there must be a prison sentence, but the one to five is still my decision. Do you understand that?
"Defendant: Yes, your Honor.
 "The Court: So, it could be — well, the best you could do if it's a prison sentence would be one year on each. The worst you can do is five years on each.
 "Defendant: One question. That can be concurrent, or consecutive?
 "The Court: Right. That's the decision I have to make. There's certain things I look at to make that determination.
 "Defendant: That was my question. If it was mandatory one year on each one it could be either three years, or one?
"The Court: Yea.
"Defendant: Okay. That's my question.
 "The Court: So, to put it in perspective, if you got a prison sentence the best thing is you could get one on each and they would be concurrent and so you would serve one year. The worst that could happen —
"Defendant: Fifteen.
 "The Court: — is fifteen because it would be five on each and they would be consecutive that way. Or, they could be concurrent, at the best end, or anything in the middle — any combination thereof. I could find, based upon the facts that I'll look at in the pre-sentence investigation and what's presented at sentencing, that two of them should be consecutive, but concurrent to a third. I mean, I don't know what the facts are going to show in that regard. But, do you see the combinations that could occur?
"Defendant: Yes.
 "The Court: Or, two of them could get five years and the third, maybe because of the circumstances, would be less than five. I don't know. I'm just telling you all of the possibilities.
"Defendant: I understand.
 "The Court: Okay. But, again, the mandatory nature is the thing that I think you really need to understand. As the code section is written it appears that they are mandatory, meaning that you would have to get prison sentences of some sort. But, again, I'll give your attorney leave to debate that issue either before sentencing or at sentencing.
"Mr. Fisher: One moment.
"(WHEREUPON, Court went off the record briefly.)
 "The Court: Now, do you understand everything we've said thus far?
"Defendant: Yes, your Honor?
 "The Court: And if any of this stuff that's being said to you raises a question, let me know. The ultimate question I'm going to ask you here in a few minutes is — "do you want to go ahead and plead?" If you go ahead and plead you have to do that and I want to make sure you do that with a full understanding of what could happen.
"Defendant: I appreciate that.
 "The Court: So, do you understand now what could happen to you if you plead guilty as it's indicated?
"Defendant: Yes, your Honor.
"* * *
 "The Court: So, you're doing this willingly, voluntarily, and with a full understanding of what could happen?
"Defendant: Yes, your Honor.
 "The Court: Do you have any questions about anything we've gone over or anything that we haven't gone over?
"Defendant: Not at the present time.
"* * *
 "The Court: Okay. Any time I say anything that you don't understand, let me know. You want to go ahead now at this time and plead guilty to the three counts pursuant to the plea negotiations?
"Defendant: Yes.
"* * *
 "The Court: Okay. Again, before we go over this, as you were talking with your attorney I was thinking, too. I want the record to be clear on this mandatory. Just so the record is clear, it's my belief now, Mr. Pickering, that prison is mandatory. That's the way I'm advising you. It is subject to debate. I guess what I'm saying is I believe now it's mandatory and I want to accept your plea only on the condition that you understand it's mandatory now. The only thing that could happen would be to your benefit and it would be that I was convinced later that it's not mandatory. So, it can't get any worse. My feelings now, and I know the State's position, is that it is mandatory. I don't want you to enter this plea unless you know that as I'm interpreting it at this point it is mandatory.
 "Defendant: I was not aware of that before I came in here, but —
"The Court: Does that change your decision?
"Defendant: No. Jim and I have already talked about it.
 "The Court: Well, that's the important thing — that if it changes your decision, if you weren't aware of that and now that you are aware that it's the Court's feeling that it is mandatory, if that changes your mind then that's what I need to know. It doesn't change your mind to plead?
"Defendant: Jim and I discussed it. No.
"* * *
 "The Court: Okay. Mandatory means that you're not eligible for community control, or judicial release. It means you must get a prison sentence. Even if they are not mandatory you could still get prison. Do you understand that?
"Defendant: Yes." Transcript, 3-18.
This dialogue reveals that Pickering was informed several times by the trial court that he would not be eligible for parole. Pickering also was informed that he could potentially receive a maximum sentence of fifteen years in prison for the three charges. The trial court not only complied with the Crim.R. 11 requirements, but went out of its way to insure that Pickering understood the potential consequences of his plea and that he was voluntarily entering the plea. The trial court also went over all of the rights that Pickering would be waiving by entering a guilty plea. At the end of this extensive dialogue, Pickering told the trial court that he still wanted to enter a guilty plea. Therefore, the second and sixth assignments of error are overruled.
In the first and fifth assignments of error, Pickering claims that he was denied effective counsel.
 "When considering an allegation of ineffective assistance of counsel, a two-step process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness."
 "On the issue of counsel's effectiveness, the appellant has the burden of proof, since in Ohio a properly licensed attorney is presumably competent. * * * [T]he initial burden [is placed] upon the appellant since, * * * [t]o impose automatically the initial burden of proof on the state * * * would penalize the prosecution for acts over which it can have no control." State v. Jackson (1980), 64 Ohio St.2d 107, 110-11, 413 N.E.2d 819, 822.
Here, Pickering claims that his trial counsel was defective for two reasons. First, Pickering claims that his trial counsel failed to tell him that his sentence was mandatory and that he would not be eligible for probation before he entered guilty pleas. The record reveals, however, that Pickering and his trial counsel had conversations off the record to discuss these matters. The record also reveals that Pickering informed the court that his trial counsel had explained these matters to him and that he understood them. Therefore, the first and fifth assignments of error are overruled.
The third and fourth assignments of error address the trial court's imposition of maximum and consecutive sentences. R.C. 2929.14 addresses these issues.
"(B) Except as provided in [R.C. 2929.14(C), (D)(1), (D)(2), (D)(3), or (G), R.C. 2907.02, or in R.C. 22925], if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender and if the offender previously has not served a prison term, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others."
"(C) Except as provided in [R.C. 2929.14(G) or 2925], the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section."
"* * *
"(E)(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
"* * *
"(b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct." R.C. 2929.14.
Here, the trial court specifically found that the seriousness factors outweighed those indicating that the offense was less serious. Sentencing Tr. 103. The trial court then found that a prison term is consistent with the purposes of sentencing. Id.
"The Court orders that all three counts be served consecutive to each other. The harm done by the defendant was so great and unusual that a single term does not adequately reflect the seriousness of the defendant's conduct."
"The Court finds the shortest prison term is not required because the Court finds the shortest prison term would demean the seriousness of the defendant's conduct."
"The Court has imposed the longest prison term because the Court finds the defendant committed the worst form of the offense. And again, somebody would argue well, how do you decide what the worst form of gross sexual imposition is. The facts in this case that led me to that conclusion was again, the trust factor, the relationship factor. The defendant being the only thing these kids had. And even though he was doing these terrible things, this is all they had. And they wanted to keep a hold of what they had knowing — or not knowing perhaps what was going on. So it's the relationship. The way it was done in the privacy of the home, or the privacy of a motel room when on vacation in the wee hours of the dark when Josh would get in bed or whatever. Those factors, those facts are the circumstances that the Court finds this is the reason this is the worst form of the offense." Sentencing Tr. 105-106.
With these findings, the trial court complied with all of the statutory requirements. Thus, we do not find that the trial court abused its discretion. The third and fourth assignments of error are overruled.
Finally, Pickering claims that the trial court erred in not allowing him to withdraw his guilty plea because it was against the manifest weight of the evidence. A motion to withdraw a guilty plea may be granted after sentencing only to correct a manifest injustice. Crim.R. 32.1. The decision whether to allow a defendant to withdraw a guilty plea is within the sound discretion of the trial court. State v. Xie (1992),62 Ohio St.3d 521, 584 N.E.2d 715. Absent a showing of unreasonableness or arbitrariness, the decision of the trial court will not be reversed.Id.
In this case, Pickering presented evidence at the hearing that he had not wanted to enter the guilty plea prior to the change of plea hearing. In support of this claim, Pickering had several people testify that Pickering had not wanted to plead guilty. However, Pickering was given every opportunity to refuse to enter a guilty plea at the hearing. The trial court even gave Pickering the opportunity to withdraw his guilty plea before the change of plea hearing ended, but Pickering personally declined to do so. Instead, Pickering told the trial court that he wanted to plead guilty and that he was doing so of his own free will and that he had not been promised anything, except for those items stated in the plea agreement, in return for the guilty plea. Given this evidence, the trial court did not abuse its discretion in denying Pickering's motion to withdraw his plea. The seventh assignment of error is overruled.
The judgment of the Court of Common Pleas of Allen County is affirmed.
Judgment Affirmed.
HADLEY and WALTERS, JJ., concur.